CAL W. KORNSTEDT, Corporation Counsel, Dane County
You have requested my opinion on several issues relating to the authority of a circuit court judge to sentence a repeat offender of our intoxicated driver law (operating while intoxicated, hereinafter "OWI") to a rehabilitation facility created under section 59.07 (76), Stats., in lieu of part or all of the mandatory imprisonment required by section 346.65 (2)(b) and (c). Your request is apparently prompted by the desire of your county board to create a rehabilitation facility, coupled with its concern that such a facility might not be available for the sentencing of repeat OWI offenders. Paraphrasing your questions, you ask:
 1. Can a repeat OWI offender be sentenced to a rehabilitation facility created under section 59.07
(76) in satisfaction of the mandatory imprisonment required by section 346.65 (2)(b) and (c)?
 2. If a repeat OWI offender can be sentenced to a rehabilitation facility, must such a rehabilitation facility be a "locked" facility in the sense that inmates would be prevented from leaving the facility by virtue of physical barriers and locks on all of the doors?
 3. If a repeat OWI offender can be sentenced to a rehabilitation facility, must such a rehabilitation facility be under the control and direct authority of the county sheriff or a superintendent appointed for the rehabilitation facility? *Page 76 
 4. If a repeat OWI offender can be sentenced to a rehabilitation facility, and if such a rehabilitation facility must be under the control and direct authority of the county sheriff or a superintendent appointed for the rehabilitation facility, may the rehabilitation facility be "staffed" or run on a day-to-day basis by "counselors" or other non-law enforcement personnel with the county sheriff, the superintendent, or their designee "on call" and available for immediate contact should any need arise?
In my opinion, the present statutes require a repeat OWI offender to be imprisoned in an institution which "confines" that individual. The requisites of the confinement are required whether an institution is called a jail or a rehabilitation facility. Because the term rehabilitation facility is statutorily undefined, but appears to have been equated with the term jail within certain statutes, I believe a trial court may sentence a repeat OWI offender to a rehabilitation facility. However, your three remaining questions suggest that the rehabilitation facility envisioned for use by your county board would not adequately "confine" repeat OWI offenders. Consequently, in my opinion, the answers to those three remaining questions are of utmost significance. Those answers establish the minimum characteristics of the "confinement" required for repeat OWI offenders.[1]
Before addressing your particular questions, I find it useful to consider both the statutory scheme within which "confinement" *Page 77 
is required, as well as certain judicial decisions defining the parameters of such confinement, for repeat OWI offenders.
Section 346.65 (2)(b) and (c) sets forth the penalties for repeat OWI violations:
 (b) Shall be fined . . . and imprisoned not less than 5 days nor more than 6 months . . . where the offense involved the use of a vehicle, equals 2 in a 5-year period
. . . .
 (c) Shall be fined . . . and imprisoned for not less than 30 days nor more than one year in the county jail . . . where the offense involved the use of a vehicle, equals 3 or more in a 5-year period. . . .
Both of the preceding statutory subsections clearly require that the offender "shall be imprisoned" for specified periods of time.
The unique nature of this mandatory "imprisonment" provision has long been noted. See State v. Duffy, 54 Wis.2d 61, 65,194 N.W.2d 624 (1972); accord State v. Meddaugh, 148 Wis.2d 204,208, 435 N.W.2d 269 (Ct.App. 1988); State v. McKenzie,139 Wis.2d 171, 176-77, 407 N.W.2d 274 (Ct.App. 1987). In Duffy, the defendant objected to the imposition of a mandatory jail sentence upon his conviction for driving after revocation or suspension. His first claim was that the penalty provisions of section 343.44, although cast in terms of "shall be imprisoned," still allowed for a stay of sentence and imposition of probation. The Wisconsin Supreme Court held that while most penal statutes in Wisconsin allow for a sentencing judge to impose and stay sentence in favor of probation, section 343.44, with its unambiguous mandatory language, did not give a trial judge this alternative:
 Most of the penal statutes of this state grant the trial court discretion to either impose a sentence of imprisonment within prescribed statutory limitations or to impose a period probation pursuant to the provisions of sec. 973.09, Stats. This authority is generally indicated by the language "may be imprisoned," which precedes the limitation on the period *Page 78 
of imprisonment in the particular provision. The legislature has enacted but few statutory provisions comparable to the one in the instant case, which expressly provide that a person convicted thereunder "shall be imprisoned." If probation were to be available in either case, the legislature would have no purpose in employing the word "may" in some cases and the word "shall" in others.
Duffy, 54 Wis.2d at 64-65 (footnote omitted). AccordMeddaugh, 148 Wis.2d at 208-09.[2] Consequently, Duffy long ago established that, when the Legislature provides for mandatory imprisonment, it takes away from trial judges a significant part of the discretion that normally attends the sentencing process. Seealso Prue v. State, 63 Wis.2d 109, 216 N.W.2d 43 (1974).
The mandatory nature of the imprisonment requirement has also been the focus of several recent decisions reviewing alternative dispositions by trial courts. E.g., Meddaugh, 148 Wis.2d 204;accord State v. Pettis, 149 Wis.2d 207, 441 N.W.2d 247
(Ct.App. 1989); State v. Cobb, 135 Wis.2d 181, 400 N.W.2d 9
(Ct.App. 1986). Faced with the mandatory language, trial courts have attempted various dispositions to both facilitate rehabilitation and to obviate the overcrowding of jails with repeat OWI offenders. However, the trial courts have been severely limited in their efforts. Id.
In Meddaugh, a case involving a repeat OWI offender, the court of appeals rejected a claim that time spent in a county jail (during non-working hours), as a condition of probation, could be considered "imprisonment" within the meaning of section *Page 79 
346.65 (2)(c). Meddaugh, 148 Wis.2d 204. The court concluded that the trial court lacked the authority to withhold or stay the sentence of a repeat OWI offender and instead place such an offender on probation. Meddaugh, 148 Wis.2d at 207. So concluding, the court considered the meaning of the term "imprisoned":
 We agree that one of Webster's definitions of the term "imprison" is "to put in prison: confine in a jail." And while it may be true that the word is often used in a broad, general sense, "imprison" is also a legal term and, as such, "should be given its legal meaning when used in the statutes and the law unless there are strong indications the term was used in a general sense." . . .
. . . .
 When it provided for "imprisonment" of persons convicted of multiple drunk driving offenses in sec. 346.65 (2)(c), Stats., the legislature gave no indication that it intended that word as meaning anything other than its accepted legal definition — incarceration pursuant to the imposition of a sentence.
Meddaugh, 148 Wis.2d at 209-10 (citations omitted). I wish to add, however, that although constrained by the relevant statute and previous case law, the three-member panel all expressed their dissatisfaction with the result. Meddaugh,148 Wis.2d at 211, 214-18.
Two other recent decisions of the court of appeals, although not involving repeat OWI offenders, are relevant to your inquiry.Pettis, 149 Wis.2d 207; Cobb, 135 Wis.2d 181. Both involved the review of innovative dispositions by the trial courts. In Pettis, the court of appeals concluded that a defendant who was required to remain in his home as a condition of meeting his cash bond was not entitled to sentence credit for time spent under home detention. In Cobb, the court concluded that a defendant was not entitled to sentence credit for time spent in a drug treatment facility as a condition of probation because he was not in custody *Page 80 
within the meaning of section 973.155 (1)(a) while at the facility.[3] In both instances, the rationale employed by the court of appeals involved the determination of whether the time at issue could be measured under the escape statute — section946.42.
While the sentence credit statute, and the two decisions, refer to the term "custody," that term, in my opinion, is interchangeable with "imprisoned" for the purpose of your inquiry. In Cobb, the court equated the terms "custody," "confined" and "locked-in," and further noted that all involved a limitation by "either imprisonment or physical detention."Cobb, 135 Wis.2d at 184-85. Further, in an earlier decision, the Wisconsin Supreme Court recognized the following dictionary definitions of custody:
 Webster's Third New International Dictionary (1966) at 559, defines "custody" as: "guarding, keeping . . . 2: judicial or penal safekeeping: control of a thing or person with such actual or constructive possession as fulfills the purpose of the law or duty requiring it: imprisonment or durance [`restraint by or as if by physical force: confinement, imprisonment . . .'] of persons . . ." The Random House Dictionary of the English language (1966) at 357, defines *Page 81 
"custody" as: "2. the keeping or charge of officers of the law . . . 3. imprisonment; legal restraint."
State v. Gilbert, 115 Wis.2d 371, 378, 340 N.W.2d 511 (1983).[4]
Having set forth the preliminary background necessary to render the opinion, I now turn to the analysis of your specific questions.
Your first question requires me to address the availability of a proposed rehabilitation facility for the disposition of repeat OWI offenders. As you correctly note, certain statutory provisions seem to suggest that a county jail and a rehabilitation facility may be equated for purpose of mandatory imprisonment. For example, section 53.30 states that a "`jail' includes . . . rehabilitation facilities" for certain purposes in chapter 53. Similarly, section 59.07 (76) provides that a rehabilitation facility may serve as an "extension of the jail" and may be used "to provide any person sentenced to the county jail with a program of rehabilitation for such part of the person's sentence or commitment as the court determines will be of rehabilitative value to the prisoner." Likewise, section 59.68 (1) refers to a rehabilitation facility as an extension of the jail and section 53.36 (1), again speaking of extension of the jail, refers to cells as being part of the rehabilitation facility. However, as you also correctly note, the real question is whether those provisions, and in particular section 59.07 (76), are in any manner "limited in [their] application by other statutory provisions, in particular the provisions in sec. 346.65 (2)(b) and (c) which require a mandatory *Page 82 
term of imprisonment for OWI repeat offenders." In my opinion, the limits expressed by the Wisconsin appellate courts in all the preceding decisions are applicable to any facility to be used for the disposition of repeat OWI offenders. Consequently, while any such facility may be called a rehabilitation facility, one must look at its characteristics rather than its name. In other words, any institution housing repeat OWI offenders must satisfy certain requisite characteristics of "confinement."
The previous observations now lead to my response to your most significant inquiries in questions two, three and four — the parameters required of any institution intended to "imprison" repeat OWI offenders. The following parameters would be applicable whether the institution would be designated a jail or a rehabilitation facility. These responses establish the minimum characteristics of the "imprisonment" required for repeat OWI offenders.
In question two you ask, if a repeat OWI offender can be sentenced to a rehabilitation facility, must such a rehabilitation facility be a "locked" facility in the sense that inmates would be prevented from leaving the facility by virtue of physical barriers and door locks. In my opinion, physical barriers and door locks are necessary requisites for any institution to be utilized for the "imprisonment" of repeat OWI offenders. The Wisconsin appellate courts have consistently held that confinement requires an inmate to be "locked in at night." See Pettis,149 Wis.2d at 211-12; Cobb, 135 Wis.2d at 182.
My review of the relevant statutes validates the preceding response. Wisconsin trial courts must sentence a repeat OWI offender to the county jail.[5] Section 46.17 mandates the *Page 83 
Wisconsin Department of Health and Social Services, Division of Corrections, now the Department of Corrections ("Department"), to "fix reasonable standards" for several types of facilities including jails, extensions of jails, Huber facilities[6] and rehabilitation facilities. The characteristics of a jail (or the extension of a jail), including the requirements of physical barriers and locks, have been set by the Department. See Wis. Admin. Code § HSS 350 (1990). Likewise, the characteristics of a Huber facility, including the requirement of a lock, but only to prevent unauthorized entry, have been set by the Department. See
Wis. Admin. Code § HSS 348.05 (8) (1987). However, the Department has not similarly created a rule for the standards required for a rehabilitation facility. In the absence of such a rule, I am required to determine which of the existing rules (for jails or Huber facilities) might be more appropriate. For all of the reasons previously set forth in this opinion, in particular the statutory equivalence of jails and rehabilitation facilities, I believe the characteristics of a jail must apply to a rehabilitation facility. Consequently, physical barriers and locks should be in compliance with the requirements for a jail as set forth in the Wisconsin Administrative Code. See Wis. Admin. Code § HSS 350 (1990).[7] *Page 84 
In question three you ask, if a repeat OWI offender can be sentenced to a rehabilitation facility, must such a rehabilitation facility be under the control and direct authority of the county sheriff or a superintendent appointed for the rehabilitation facility. In my opinion, any facility confining repeat OWI offenders must be under the control and direct authority of the county sheriff. Section 59.23 (1) provides that the sheriff shall "[t]ake the charge and custody of the jail maintained by his county and the persons therein, and keep them himself or by his deputy or jailer." Seealso Professional Police Ass'n v. Dane County, 106 Wis.2d 303,310, 316 N.W.2d 656 (1982); State ex rel. Kennedy v. Brunst,26 Wis. 412 (1870). Consequently, either the county sheriff or an appointed deputy must be responsible for the administration of any facility housing repeat OWI offenders. Recently, while opining that neither the sheriff nor the county board may "privatize" the jailer function of the office of sheriff under section59.23 (1), I reaffirmed the importance of this historic function remaining with the sheriff:
 Section 59.23 (1), Stats., provides that the sheriff shall "[t]ake the charge and custody of the jail maintained by his county and the persons therein, and keep them himself or by his deputy or jailer." This function of the sheriff is one of the most central and important of his historic duties and was early recognized by our supreme court as a distinctive constitutional feature of the office from time immemorial, which even the Legislature is not competent to take away or transfer to another. State ex rel. Kennedy v. Brunst, 26 Wis. 412 (1870). See also Professional Police Ass'n v. Dane County, 106 Wis.2d 303, 310, 316 N.W.2d 656 (1982); Schultz v. Milwaukee County, 245 Wis. 111, 114-15, 13 N.W.2d 580 (1944). Referring to the above quoted language of section 59.23 (1), in Bell v. Fond du Lac County, 53 Wis. 433, 433-34 (1881), the supreme court further stated that "the statute imposes the absolute duty and responsibility" upon the sheriff to take charge of the persons confined in *Page 85 
the county jail and that "the sheriff has no election or choice in the matter."
77 Op. Att'y Gen. 94 (1988).[8]
Your fourth question inquires regarding the possibility of staffing a facility on a day-to-day basis by "counselors" with the county sheriff, a superintendent or the designee "on call" and available for immediate contact should any need arise. My previous response to question three demonstrates that I believe that the important function of operating such a facility may not be delegated to "counselors" on a day-to-day basis.[9] As I have previously stated, section 59.23 (1) is very explicit in directing that the jail and prisoners must be kept by the sheriff "himself personally, or by his deputy or jailer." Moreover, section 53.42, providing that "[t]here shall be a keeper or custodian or attendant present at every jail while there is a prisoner therein," also contemplates control on a day-to-day basis by the sheriff and his or her deputies. Finally, in my opinion, persons duly qualified as "jail officers," as authorized by section 165.85 (2)(bn), must supervise, control or maintain the facility on a day-to-day basis.
DJH:JSS
[1] The above circumstances must be distinguished from the situation where a convicted repeat OWI offender may be transported for daytime rehabilitative treatment to a rehabilitation center. In my opinion, a rehabilitation facility lacking in the characteristics of "confinement" would be available for such daytime treatment. The "confinement" referred to in this opinion only contemplates offenders being "locked in at night."See State v. Pettis, 149 Wis.2d 207, 211, 441 N.W.2d 247 (Ct.App. 1989). However, I do not believe that your inquiry contemplates a rehabilitation facility limited to daytime treatment only.
[2] In McKenzie, 139 Wis.2d at 175-76, the court of appeals considered the reverse situation — whether the trial court erred in not
considering probation in a motor vehicle offense where the statute provided that one convicted of the offense may be "imprisoned not less than 30 days nor more than one year" (emphasis in original). The court of appeals held that because imprisonment was not mandatory, the trial court erred as a matter of law when it concluded that probation was not available.
[3] In Cobb, the court held that the defendant was not in custody because he was not physically detained. Cobb, 135 Wis.2d at 185. The holding is of further interest since placement at the drug treatment center was a condition of probation, leaving the premises could be grounds for revocation. By equating custody with physical detention, the court implicitly rejected the theory that restrictions on movement constitute custody simply because negative consequences can result from failure to obey the restrictions.
In Cobb the court also adopted the Wisconsin Criminal Jury Instructions Committee's definition of custody. Cobb, 135 Wis.2d at 183. In relying on the reasoning of the Wisconsin Criminal Jury Instructions Committee, the court of appeals acted in accord with the approach of the Wisconsin Supreme Court in State v. Gilbert, 115 Wis.2d 371, 340 N.W.2d 511 (1983).
[4] Earlier, in State v. Schaller, 70 Wis.2d 107, 233 N.W.2d 416 (1975), the Wisconsin Supreme Court held that a probationer confined in the county jail as a condition of probation could be charged and convicted of escape if he escaped from the confines of the jail, but he could not be so charged and convicted if he failed to timely return to the jail after being released for a few hours for a legitimate purpose. Schaller, 70 Wis.2d at 109,113-14. The court refused to view the defendant as being in "constructive custody" during his release.
[5] Subsection (c) of section 346.65 expressly provides that third offense repeat OWI offenders shall be imprisoned "in the county jail." Subsection (b) of section 346.65 does not specify a place of imprisonment. However, section 973.02 provides that when a statute is silent on the place of imprisonment "a sentence of less than one year shall be to the county jail." The section applies to violations of subsection (b), because no term of imprisonment for such violations may exceed six months. In effect, violators of either subsection must be imprisoned in the "county jail."
[6] Section 56.08, commonly known as the "Huber Law," permits several types of offenders, including repeat OWI offenders, sentenced to a county jail to be "granted the privilege of leaving the jail during necessary and reasonable hours" for specified purposes. The ability to permit such offenders to serve in a "Huber facility," where such a facility exists pursuant to section 56.09, is not granted to the Wisconsin trial courts, but only to the county sheriffs. Sec. 56.08 (1) and (2m), Stats.
[7] I urge the Department to create rules governing rehabilitation facilities to clarify the requirements of such a facility. Dane County, and any other county contemplating a rehabilitation facility, must obtain approval of the Department.
[8] My opinion is not inconsistent with the language of section 59.07
(76), which provides a county the alternative of establishing a rehabilitation facility under the exclusive control of a superintendent. A county may choose to operate part or all of a rehabilitation facility that does not provide for overnight confinement. See n. 1. Individuals from either a separate Huber facility or on probation could use such a rehabilitation facility without the requirement that the sheriff be in control. In effect, this would be no different than permitting these individuals to regularly obtain medical treatment at a facility not under the control of a sheriff.
[9] Again, I am only referring to an overnight rehabilitation facility. I do not suggest that a county sheriff should be given ultimate control of the daytime rehabilitation program offered to repeat OWI offenders. *Page 86